United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Alejandra Rondon, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-20857-Civ-Scola |
| | ) | |
| Home Nurse Corp., Defendant. | ) | |

### Order On Motions For Summary Judgment

This matter is before the Court upon the parties' cross motions for summary judgment. Having reviewed the parties' motions, the record, and the relevant legal authorities, the Court **denies** the Plaintiff's motion for summary judgment (**ECF No. 38**) and **grants** the Defendant's motion for summary judgment (**ECF No. 42**), as further set forth below.

1. **Background**

In this Fair Labor Standards Act ("FLSA") case, the Plaintiff, Alejandra Rondon sues her employer, the Palace at Home for allegedly unpaid overtime wages. The Palace at Home is a home health agency, which refers home health aides, private duty aides, nurses, and therapists to the homes of patients to assist the elderly and infirm with the activities of daily living. (ECF No. 33, 44, at ¶ 2.) The Plaintiff is a home health aide who was placed by the Palace at Home. While the Plaintiff claims she was an employee, the Defendant states that she was an independent contractor. (*Id.* at ¶ 4.)

The Defendant utilizes rates agreements in order to detail the pay that will be provided to aides, such as the Plaintiff. For instance, the Defendant's 2017 rate agreement indicates that aides would be paid $8.10 per hour, the then-Florida minimum wage. The rate agreement notes that for hourly shifts, any hours in excess of 40 hours would be paid at 1.5 times the hourly rate, at $12.15 per hour. The rates agreement further notes that if the aide was assigned a 12-hour shift, the aide would be paid for 40 hours at $8.10 per hour and 37 hours at $12.15 per hour. When aides are assigned 12-hour shifts, they are paid for eleven hours of work as each 12 hour shift includes 60 minutes of break time for the aide. (*Id.* at ¶ 23.) Accordingly, the Plaintiff would receive pay corresponding to 8 hours of regular pay and 3 hours of overtime pay per 12-hour shift. The 2018-2021 rates agreements are similar in form, with the regular rate and corresponding overtime rate increasing year-to-year to account for increases in Florida's minimum wage. The parties agree that whether or not these agreements were signed by Ms. Rondon, which is disputed, is of no event.

(ECF No. 38, at 2; ECF No. 61, at 1-2.) The parties also do not dispute the number of hours worked by Ms. Rondon. What matters is whether the Plaintiff was paid in a manner consistent with FLSA.

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Under circumstances where "more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not

grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

The FLSA requires employers to pay their employees[1] 1.5 times the regular rate of pay for all work performed in excess of 40 hours per week. *Ramirez v. Home Nurse Corp.*, No. 17-21802-Civ, 2018 WL 318472, at *3 (S.D. Fla. Jan. 4, 2018) (Moreno, J.). "When an employer provides 'extra compensation . . . by a premium rate paid for certain hours worked by the employee in any day . . . because such hours are hours worked in excess of eight in a day,' that extra compensation 'shall be creditable toward overtime compensation.'" *Id.* (quoting 27 U.S.C. § 207(e)(5), § 207(h)(2)). "Even where an employer pays employees for hours that they did not work, 'it is permissible (but not required) to count these hours as worked in determining the amount of overtime premium pay, due for hours in excess of 8 per day . . . which may be . . . credited toward the statutory overtime compensation.'" *Id.* (quoting 29 C.F.R. § 778.202(a)).

### A. Rates Agreements

This is not the first time the Defendant's rate agreements have been challenged in this District. In *Ramirez v. Home Nurse Corp.*, United States District Judge Federico A. Moreno found that the Defendant's rate agreements appropriately comply with the FLSA. *Ramirez*, 2018 WL 318472, at *4. The Plaintiff does not meaningfully engage with this adverse precedent, other than to say "Plaintiff was not a party to those previous proceedings." (ECF No. 43, at 3.) Regardless of whether or not the Plaintiff was a party to the proceedings, the Court finds Judge Moreno's review of the Defendant's rate agreements and conclusion that they are in compliance with the FLSA to be persuasive. For instance, in *Ramirez*, Judge Moreno concluded that the Defendant "produced considerable evidence supporting its assertion that the daily shift rate included an overtime premium for hours worked in excess of 40 per week." *Ramirez*, 2018 WL 318472, at *4. The same is true here. In fact, Judge Moreno found the 2017 rates agreement, one of the agreements at issue here, complied with the FLSA and granted summary judgment in the Defendant's favor.

The Defendant has produced its rates sheets, and payroll reports showing the Plaintiff's pay for the entire period she worked for the Defendant. (ECF No. 33-2.) These reports detail the time the Plaintiff began work, the time

---

[1] It is disputed whether the Plaintiff was an employee or independent contractor, however, the Court need not reach this issue for the purposes of this order.

the Plaintiff ended work, and whether the Plaintiff's work was on an hourly or fixed basis, where a fixed rate corresponds to shift pay, such as for a 12-hour shift. (*See* ECF No. 41-7.) The Plaintiff has not offered any reason to "question [the Defendant's] logical, substantiated explanation for the daily rate" and, as was fatal to the claims in *Ramirez*, her analysis seems premised on a misreading of the FLSA and applicable precedent. *Ramirez*, 2018 WL 318472, at *4.

In an effort to salvage her claim, the Plaintiff states in her response to the Defendant's motion that in *Ramirez*, the Plaintiff did not argue that there was "an artificial 'split day' plan as Plaintiff has done in this action." (ECF No. 43, at 3.) In *Seraphin v. TomKats, Inc.*, which the *Ramirez* court found instructive, the court explained a split day is when a defendant "artificially divides [a plaintiff's] daily salary into a straight time period and an overtime period." No. 11-CV-4382, 2013 WL 940914, at *3 (E.D.N.Y. March 11, 2013). Such payment plans are unlawful under the FLSA as an employee "who would ordinarily command an hour rate of pay well in excess of the minimum for his work is assigned a low hourly rate (often the minimum) for the first hour . . . of each day. This rate is designated as the regular rate" and then the employee is paid time and a half based on the regular rate for each additional hour worked during the workday. *Id.* As in *Seraphin* and *Ramirez*, the Court finds that the Plaintiff has introduced no facts or evidence to show the Defendant's payment framework is impermissible under the FLSA pursuant to a split pay theory. The Plaintiff herself seems to acknowledge that *Seraphin* is persuasive, citing approvingly to the decision in her own brief.

In support of her argument that the Plaintiff was paid an artificially low rate, the Plaintiff submits a "Rule 1006 Summary Chart" (ECF No. 41-10), but the Court is not persuaded by this exhibit which is calculated pursuant to a misapplication of FLSA precedent. Instead, the Court finds the record evidence, namely the "Payroll Posted Report" provided by the Defendant to be highly instructive. This report details the weekly period the Plaintiff's work pertained to, the number of hours worked (including the time work began and ended), and the amount paid to the Plaintiff for the work that was undertaken and whether the work was on an hourly or shift-based basis.[2] The amounts in this report correspond to the amounts detailed in the Defendant's rates agreements,

---

[2] The Plaintiff argues that the Defendant did not know when the Plaintiff's work week began or ended and failed to keep appropriate records, but that is belied by deposition testimony and the Payroll Posted Report. (*See* Caceres Depo., ECF No. 35-1, at 19:10-16; *see also* ECF No. 33-2.)

which as the Court previously stated, have been found to be in accord with the FLSA.[3]

The Plaintiff's reliance on *Allen v. Board of Public Education for Bibb County*, as support for her calculation is misplaced and misapplies Eleventh Circuit precedent. 495 F.3d 1306 (11th Cir. 2007). In *Allen*, the Eleventh Circuit endorsed the Plaintiff's proposed method of calculating, but in a different context. Under *Allen* it is permissible to calculate a regular rate by dividing total wages earned by total hours worked, but only where a worker receives different pay for different types of work—i.e. (taking the example used in *Allen*) a bus driver who earns $11.00 per hour for driving a regular bus route, but only $6.00 per hour for driving for a field trip. *Id.*, at 1310-11. This is permissible because it is difficult to determine if the individual in question received minimum wage in accordance with the FLSA where they received varied rates of pay. Accordingly, it is necessary to calculate the regular rate the individual received by dividing the individual's compensation by the total hours worked, and then multiplying the regular rate by .5 for any hours worked in excess of 40 hours for a given week. That is emphatically not how the Defendant pays its employees, and indeed the record evidence supports that the Plaintiff was paid an hourly wage, as set forth in the rates agreements, in a manner consistent with the FLSA.

Finally, to the extent the Plaintiff attempts to advance arguments under the "fluctuating workweek" approach, such arguments equally fail. The fluctuating workweek method is utilized when the number of hours worked each week varies, while a weekly salary remains constant. *Seraphin*, 2013 WL 940914, at *3. Here, the Plaintiff was not paid a weekly salary. Even though the Plaintiff's work fluctuated each week, the Plaintiff was compensated by the day, and the fixed daily salary was based on a fixed number of hours, so there is no reasonable basis on which to advance an FLSA claim under a fluctuating workweek theory.

Put simply, based on persuasive precedent, and the lack of any meaningful arguments or evidence to the contrary, the Court sees no basis upon which to depart from *Ramirez* and find the Defendant's payment scheme, calculated pursuant to the rates agreements at issue, violates the FLSA.

---

[3] As noted above, the 2017 agreement was reviewed by Judge Moreno in *Ramirez*, and while the additional agreements in this case were not at issue in *Ramirez*, the rates agreements are identical other than accounting for annual minimum wage increases. (*See, e.g.*, ECF No. 37, at 151:12-152:14); *see also Ramirez*, 2018 WL 318472, at *1 (noting the regular rate in Defendant's rates agreements correspond to Florida's minimum wage). The Plaintiff advances no arguments that the 2017, 2018, 2019, 2020, or 2021 rates agreements differ from one another in any material way, and the Court cannot identify any such difference.

### B. 60-Minute Breaks

Nonetheless, the Court's work is not done. With the issue of the validity of the rates agreements aside, the Court now turns to the Plaintiff's arguments that she was not able to take her allotted 60-minute breaks such that she was underpaid for the 12-hour shifts she worked. The Defendant argues that the Plaintiff's claim is belied by the record evidence.

In support of her motion for summary judgment, the Plaintiff submitted a declaration stating, "I could never take a one-hour break while working. The patient was elderly and needed my full attention while I was working. I never left the home of the patient while I worked therein. Defendant required me to sign a document which states that I took a one-hour break when in reality, I never took a one-hour break." (ECF No. 41-1, at ¶ 9.) The Court notes that "[c]onclusory, uncorroborated allegations by a plaintiff in a affidavit or deposition will not create an issue of fact for trial to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). Accordingly, if the Plaintiff's declaration is unsupported by the record, it will not defeat the Defendant's summary judgment motion.

In support of its argument that the Plaintiff's declaration is belied by the record, the Defendant points to the Plaintiff's deposition testimony where the Plaintiff acknowledges that she signed forms (which were also signed by the Plaintiff's client) where she certified that she took her hour break as the Defendant expected (Rendon Dep., ECF No. 34-1, at 18:16-22), that she understood English well enough to understand what she was certifying on her signed forms, (*Id.* at 16:6-23) and that she was free to leave the patient's side to take her breaks, though notes she would often take them in the patient's home (*Id.* at 18:23-19:11). The certifications included on the Plaintiff's signed shift forms state: "Signature above confirms that during 8-12 hours shifts, Private Duty Home Health Aide took 60 minutes of breaks." (*See* ECF No. 34-2, at 70.) The Plaintiff provided a signed shift form to the Defendant every week she worked for them. (Chacon Dep., ECF No. 37-1, at 129:1-17.) Moreover, while not necessary to the Court's conclusion, the Court also notes that the Defendant submitted a declaration from the daughter of the Plaintiff's client, confirming the Plaintiff took her hourly breaks.[4] The Plaintiff cannot contradict record evidence by introducing of a declaration where that declaration conflicts with her own prior deposition testimony and other evidence provided to the Court in support of summary judgment. What the record supports, and the

---

[4] As this declaration is the subject of a pending motion to strike (ECF No. 55), the Court notes that it would reach the same conclusion regardless of whether or not the Defendant provided this declaration.

Plaintiff's own prior testimony shows, is that she was able to take a 60-minute break and confirmed the same in signed documents which were co-signed by her client indicating she took 60-minute breaks as set forth in the Defendant's rates agreements.

Even if there were a genuine dispute as to whether the Plaintiff was forced to work during her 60-minute break, the Plaintiff has failed to show that the Defendant was on notice that she was unable to take her breaks. Indeed, there can be no violation of the FLSA for uncompensated work "where the employee . . . deliberately prevents his or her employer from learning of it." *Allen*, 495 F.3d at 1319. Far from showing that the Defendant was actually or constructively aware that she was allegedly unable to take breaks, the Plaintiff made affirmative weekly representations to the Defendant that she was taking the breaks that were expected of her. Under the circumstances, the Defendant could not have possibly been aware that the Plaintiff was working in excess of the stated hours because she told the Defendant on a weekly basis that was not the case.

Accordingly, the Court also finds that there is no viable claim for unpaid wages based on any supposed inability to take 60-minute breaks during the Plaintiff's 12-hour shifts.

### 4. Conclusion

In sum, based on the relevant legal authorities and the record evidence the Court finds that summary judgment is appropriately entered for the Defendant. The Defendant's rate agreements do not violate the FLSA as has previously been determined in this District, and the record evidence shows that the Plaintiff was compensated pursuant to these agreements. Moreover, the record evidence shows that the Plaintiff was permitted to take her breaks, and even if that were not the case, that her own actions prevented the Defendant from learning that she was working additional hours for which she was due compensation. As such, the Court **grants** the Defendant's motion for summary judgment (**ECF No. 38**) and **denies** the Plaintiff's motion for summary judgment (**ECF No. 42**).

The Court directs the Clerk to **close** this case. All pending motions, if any, are **denied as moot**.

**Done and ordered**, in Miami, Florida, on August 18, 2021.

_____
Robert N. Scola, Jr.
United States District Judge